IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI M. KREIDER, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : NO. 10-3205 |
| v. | : |
| | : |
| DETECTIVE ROLAND W. BREAULT, | : |
| UNITED STATES OF AMERICA, AND | : |
| CITY OF LANCASTER, | : |
| | : |
| Defendants. | : |

**Memorandum**

YOHN, J.                                                                                               January 12, 2012

Plaintiff, Lori M. Kreider, brings this action against the United States of America, Detective Roland W. Breault (collectively, the "federal defendants"), and the City of Lancaster, alleging a constitutional violation and common-law tort claims. Currently before the court is the federal defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, I will grant in part and deny in part the federal defendants' motion.

I.      **Factual Background and Procedural History**[1]

    A.      **Factual Background**

This dispute arises out of the execution of an arrest warrant for Kyjaun Shivers in Lancaster, Pennsylvania, on May 6, 2007. (Fed. Defs.' Statement of Undisputed Facts in Supp. of

---

[1] Except as otherwise noted, the following facts are undisputed.

Mot. for Summ. J. ("Defs.' Statement") ¶ 3; Answer and Objections of Pl. to Defs.' Statement ("Pl.'s Objections") ¶ 3.) During the course of Shivers's arrest, plaintiff was arrested for hindering apprehension and for obstructing the administration of law or other governmental function. (*Id*.) She claims that Detective Roland W. Breault ("Detective Breault") used excessive force in effectuating her arrest.

On the evening of May 6, 2007, a joint fugitive-apprehension task force composed of law-enforcement officers from the United States Marshals Service, the Pennsylvania State Police, the Pennsylvania State Parole Board, the Lancaster County Sheriff's Department, and the Lancaster City Bureau of Police (the "task force") was briefed by State Parole Agent Damien Mscisz ("Agent Mscisz") as to the whereabouts of parole absconder Kyjaun Shivers. (Mot. of Fed. Defs. for Summ. J. Ex. 1 ("Criminal Compl.") at 3.)[2] The task force included Detective Breault, a police officer with the Lancaster City Bureau of Police who had been specially deputized by the United States Marshals Service. (Defs.' Statement ¶ 2; Pl.'s Statement of Undisputed Facts Contra Supp. of Mot. for Summ. J. ("Pl.'s Statement") ¶ 3.) Agent Mscisz

---

[2] Plaintiff objects to the use of the police criminal complaint and the arrest/booking report in the federal defendants' motion for summary judgment because she claims that these documents are inadmissible hearsay. Hearsay statements "capable of admission at trial" can be considered on summary judgment. *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). The portions of these exhibits that consist of the officer's personal observations are admissible under the public-records exception to the hearsay rule. Fed. R. Evid. 803(8). Portions of the criminal complaint that appear to contain double hearsay—hearsay statements of Agent Mscisz incorporated into the hearsay report—are, nevertheless, admissible because those incorporated statements are not offered for their truth but rather for their effect on the listener, the task force. *Lincoln v. Hanshaw*, No. 08-4207, 2009 U.S. Dist. LEXIS 38920, at *2-3 n.2 (E.D. Pa. May 6, 2009). Additionally, portions of the arrest report that appear to contain double hearsay—hearsay statements made by the plaintiff recorded in the hearsay report—are admissible because the plaintiff's statements are nonhearsay party admissions offered against her. Fed. R. Evid. 801(d)(2).

informed the task force that Shivers was wanted on felony robbery charges and a Pennsylvania state parole violation. (Criminal Compl. at 1.) He also advised them that Shivers often stayed with the plaintiff at 806 Highland Avenue in Lancaster, Pennsylvania ("the Residence").[3] (*Id*. at 3.) Later that evening, members of the task force confirmed Shivers's presence at the Residence when he was observed looking out of an upstairs window. (*Id*.) The task force began attempting to contact the occupants of the Residence around 11:15 p.m. in order to execute the warrant for Shivers's arrest. (*Id*.; Pl.'s Statement ¶ 7.)

Plaintiff, her mother, and Shivers (collectively, the "occupants") were watching television upstairs when members of the task force first rang the doorbell of the Residence. (Compl. ¶ 10; Pl.'s Statement ¶ 7.) Plaintiff looked out the window, but seeing nothing, decided to ignore the doorbell given the late hour. (Compl. ¶ 11; Pl.'s Statement ¶ 8.) The task-force officers continued ringing the doorbell, and their pounding on the door grew louder and louder. (Compl. ¶ 12; Defs.' Statement ¶ 15; Pl.'s Objections ¶ 15; Criminal Compl. at 3.) Plaintiff's mother, the owner of the Residence, directed plaintiff and Shivers not to answer the door. (Compl. ¶ 11; Pl.'s Statement ¶ 8.) The occupants continued to ignore the ringing doorbell and pounding at the door for twenty to thirty minutes. (Defs.' Statement ¶ 15, Pl.'s Objections ¶ 15; Pl.'s Statement ¶ 10.) During this time, a marked police van pulled up outside the Residence and an amplified voice began announcing, "806 Highland Avenue come out. Exit the residence." (Compl. ¶ 14; Criminal Compl. at 3.)

---

[3] The parties dispute whether plaintiff was romantically involved with Shivers at the time of her arrest. This dispute is of little import to the issues raised by federal defendants' motion.

Eventually the plaintiff decided to open the front door and was descending the staircase from the second floor to the first when members of the task force burst through the door using a battering ram. (Compl. ¶ 15; Criminal Compl. at 3.) When the task-force officers encountered plaintiff upon entering the Residence, she was standing on the fourth or fifth step up from the bottom of the staircase. (Aff. of Pl. Supplementing Compl. and Answers to Interrogs. ("Pl.'s Aff.") ¶¶ 5-6.) According to plaintiff, Shivers and her mother were standing at the top of the staircase, approximately eight steps above her, in clear view of the officers entering through the doorway. (Pl.'s Aff. ¶¶ 6-8.)

The evidence proffered by the plaintiff and the federal defendants support competing accounts of what occurred next. I must accept plaintiff's version for the purposes of this motion. According to plaintiff, men dressed in black and holding guns appeared and ordered her to "freeze and get your hands up," and she complied. (Compl. ¶ 15; Pl.'s Aff. ¶ 9.) At the time, plaintiff did not know that these individuals were police officers because they did not identify themselves, and the word "police" did not appear on their clothing. (Compl. ¶ 15.) Nevertheless, she did not resist, did not attempt to flee, was visibly unarmed, and presented no threat to the officers. (Pl.'s Aff. ¶ 10.) Although plaintiff was standing "frozen" with her hands up, Detective Breault grabbed her and dragged her down four or five steps and off of the staircase. (*Id.* at ¶ 11.) Detective Breault screamed at plaintiff, demanding, "Where is your boyfriend?" (Compl. ¶ 16; Pl.'s Statement ¶ 19), to which she responded, "Who? I don't have one." (Compl. ¶ 16; Defs.' Statement ¶ 24). He then grabbed her and pushed a piece of paper in her face. (Compl. ¶ 16; Defs.' Statement ¶ 24.)

Next, Detective Breault flung plaintiff face first into her mother's couch and pressed the back of her neck, forcing her face into the cushion and making it difficult for her to breathe. (Compl.¶ 17; Pl.'s Aff. ¶ 12.) Plaintiff felt as though she was suffocating, and believed that Detective Breault was attempting to kill her. (*Id*.) Despite the protests of plaintiff's mother and Shivers, Detective Breault continued to hold plaintiff's head down. (*Id*.) Plaintiff was lying prone when Detective Breault proceeded to pull her right leg behind her, jamming it into her back with such force that her heel reached all the way up to her shoulder blades. (Compl. ¶ 17; Pl.'s Aff. ¶ 13.) This caused her to cry out in pain. (Compl. ¶ 17; Pl.'s Aff. ¶ 14.) Keeping plaintiff's leg pulled up behind her back by pressing his own leg against her leg, Detective Breault then grabbed plaintiff's arms, pulling them backward. (Compl. ¶ 18; Pl.'s Aff. ¶ 14.) As plaintiff describes it, her arms were pulled so far behind her back and her right leg was pushed so far up her back that her arms actually met her foot. (Compl. ¶ 18; Pl.'s Aff. ¶ 14.) Detective Breault then placed handcuffs on plaintiff while keeping her right leg "smashed into her back." (Compl. ¶ 19; Pl.'s Aff. ¶ 15.) Plaintiff's buttocks and breasts were exposed throughout the incident as the small sundress she was wearing lifted up. (Compl. ¶ 18.)

Plaintiff was charged with hindering apprehension and obstructing the administration of law or other governmental function. (Compl. ¶ 19; Criminal Compl. at 1-2.) She was transported to the police station for processing. (Compl. ¶ 19; Pl.'s Aff. ¶ 17.) Once there, the officer taking her picture asked her to raise her leg so that he or she could photograph her leg tattoo. (Pl.'s Aff. ¶ 17.) Plaintiff states that she told the officer that she could not lift her leg because her leg "had been twisted around her back" and she was in excruciating pain. (*Id*.) Ultimately, plaintiff pleaded no contest to the charge of hindering apprehension, and the charge of obstruction was

dropped. (Defs.' Statement ¶ 41; Pl.'s Objections ¶ 41.)

Plaintiff claims that as a result of this incident, she sustained serious and permanent injuries including trauma to her spine; L4-L5 disc injuries; problems with her bladder; pain at L5-S1; damage to the nerves in her legs and back; arthritis in her back; pain radiating to her buttocks, legs, and feet; and complications in childbirth when she became pregnant a few years later. (Compl. ¶ 20; Pl.'s Statement Ex. A Report of Dr. Reginald J. Davis ("Report") ¶¶ 2-5.) To repair these injuries, she has undergone two spinal surgeries. (Pl.'s Aff. ¶ 18; Pl.'s Statement ¶ 28; Report ¶ 5; Supplemental Ex. to Mem. of L. ¶ 2.) She also maintains that she is under the treatment of a licensed psychologist for panic attacks, post-traumatic stress syndrome, and significant emotional distress, however, she offers no report or affidavit from him, only her own statement. (Compl. ¶ 21; Pl.'s Statement ¶ 30.)

While the federal defendants purport to accept the facts alleged by plaintiff for the purposes of the summary-judgment motion, the exhibits they rely on in their motion paint a different picture. (Mot. of Fed. Defs. for Summ. J. at 5-6, 10.) According to the federal defendants, Kreider physically blocked Detective Breault from advancing up the staircase to where Shivers was standing, and she unleashed a "tirade of profanities" toward the task force. (Criminal Compl. at 3.) Fearing that her hostilities might turn violent, Detective Breault arrested plaintiff in order to protect himself and the other officers. (*Id*. at 2-3.) Detective Breault "needed to physically restrain Kreider to effect her arrest." (*Id*.) Furthermore, the federal defendants deny that plaintiff suffered injuries during the arrest and that she complained of any injuries once at the police station. (Mot. of Fed. Defs. for Summ. J. at 10.) They point to the arrest/booking report, which notes that no medical aid was requested. (Defs.' Statement ¶ 34; Mot. of Fed. Defs. for

6

Summ. J. Ex. 4.) I must, of course, accept plaintiff's version of the facts for purposes of this motion.

### B. Procedural History

Plaintiff commenced this civil action against Detective Breault and the City of Lancaster in the Court of Common Pleas of Lancaster County on May 4, 2009, by filing a praecipe to issue writ of summons. On June 7, 2010, she filed a complaint alleging four counts. Count I is asserted against Detective Breault under 42 U.S.C. § 1983 for the use of excessive force in violation of the Fourth Amendment to the United States Constitution and article 1, sections 8 and 9 of the Pennsylvania Constitution. Count II is a *Monell* claim asserted against the City of Lancaster for failure to properly train and supervise police officers including Detective Breault in the use of force. Plaintiff brought counts III and IV against Detective Breault for assault and battery, and intentional infliction of emotional distress, respectively.

The United States Attorney certified that Detective Breault was acting within the scope of his duties as a Special Deputy United States Marshal at all relevant times, and filed a timely notice of removal on his behalf on July 1, 2010. On September 28, 2010, Detective Breault moved to substitute the United States of America as a defendant on counts III and IV of the complaint under the Federal Tort Claims Act, 28 U.S.C. § 2679(b)(1) and (d)(1), to dismiss counts III and IV against him with prejudice because he has absolutely immunity, to dismiss counts III and IV against the United States without prejudice for failure to exhaust administrative remedies, and to place counts I and II in suspense pending plaintiff's exhaustion of administrative remedies. I granted that motion on October 19, 2010, without opposition.

On March 3, 2011, following the denial of plaintiff's administrative claim, counts I and II were taken out of suspense, and counts III and IV were reinstated against the United States, but not against Detective Breault. The federal defendants filed a motion for summary judgment as to counts I, III, and IV on August 9, 2011.

## II.     Standard of Review

A motion for summary judgment will be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The moving party bears the initial burden of showing that there is no genuine issue of material fact and that it is entitled to relief. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*," *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted), offering concrete evidence supporting each essential element of its claim, *see Celotex*, 477 U.S. at 322–23. The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and may not "rely merely

8

upon bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

When a court evaluates a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms*, 90 F.3d at 744 (internal quotation marks and citations omitted). "[A]n inference based upon a speculation or conjecture," however, "does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### III.   Discussion

The federal defendants seek summary judgment in their favor as to all three counts against them. They contend that summary judgment should be granted in favor of Detective Breault as to plaintiff's excessive-force claim (count I) because he is entitled to qualified immunity. The federal defendants seek summary judgment on the claim of assault and battery (count III) on the ground that Detective Breault's actions were reasonable and therefore privileged. As to count IV, the intentional infliction of emotional distress ("IIED") claim, they argue that summary judgment must be granted because plaintiff fails to meet the required elements of an IIED cause of action.

I will deny the federal defendants' motion with respect to counts I and III because genuine disputes as to material facts make summary judgment inappropriate. I will, however, grant the federal defendants' motion with respect to count IV.

## A.     Excessive Force (Count I)

The federal defendants urge me to apply qualified immunity and grant summary judgment in their favor on count I, plaintiff's section 1983 excessive-force claim against Detective Breault. Genuine disputes as to material facts preclude summary judgment as to this claim**.**

Qualified immunity is an immunity from suit, rather than a defense to liability. *Pearson v. Callahan*, 555 U.S. 223 (2009). Governmental officials are entitled to qualified immunity under section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court has outlined a two-step process for determining whether a defendant is entitled to qualified immunity.[4] *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). First, the court analyzes whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201; *see also Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). Second, if the allegations support a violation of a constitutional right, the court must "ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. With respect to this second step, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.

---

[4] In *Pearson*, the Supreme Court held that the sequence of the two-pronged qualified-immunity analysis set forth in *Saucier* is no longer mandatory and that trial courts now have discretion to determine which of the two prongs of the analysis to apply first. 555 U.S. at 234.

Under the *Saucier* analysis, I must initially determine if the facts alleged by the plaintiff are sufficient, if believed, to show that Detective Breault violated her constitutional rights. Claims for excessive force arising in the context of an arrest are properly analyzed under the Fourth Amendment's "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because this test of reasonableness "'is not capable of precise definition or mechanical application,' . . . its proper application requires careful attention to the facts and circumstances of each particular case." *Id*. at 396 (citation omitted). In determining whether a particular use of force is constitutionally actionable, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397. The reasonableness of the force at issue "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. In *Graham*, the Supreme Court identified three factors relevant to this reasonableness analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. The Third Circuit in *Sharrar* identified additional relevant factors, including "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, [] the number of persons with whom the police officers must contend at one time," and "[whether] the physical force applied was of such an extent as to lead to injury." *Sharrar*, 128 F.3d at 822.

Applying these considerations to the instant matter, and construing the record in the light most favorable to the plaintiff, I find that genuine issues of fact exist as to whether Detective

11

Breault employed excessive force. First, plaintiff alleges that she complied with the task-force officers' orders. According to plaintiff's affidavit, she did not resist arrest and posed no threat to members of the task force. The evidence adduced by the federal defendants, on the other hand, supports a conclusion that plaintiff was verbally abusive, physically obstructive, and presented a threat to the officers. Second, evidence presented by plaintiff supports her contention that she suffered a traumatic injury to her spine during the arrest. This evidence could support an inference that Detective Breault used considerable force in arresting plaintiff. The federal defendants have proffered evidence that plaintiff did not complain of any injury following her arrest, from which one could infer that the force applied by Detective Breault was minimal. These factual determinations, which are relevant to the *Graham/Sharrar* factors described above, are for a jury, not for the court on summary judgment. Indeed, if plaintiff's version of events is credited, as it must be for purposes of this motion, a rational jury could conclude that Detective Breault's actions constituted excessive force. Plaintiff alleges that Detective Breault dragged her down the stairs, threw her onto a sofa, held her face against a pillow so that she could not breathe, and wrenched her leg so far behind her back that her foot actually touched her shoulder blades, causing a severe injury to her spine that has required two corrective spinal surgeries thus far. In light of plaintiff's sworn statements that she was not resisting arrest, did not attempt to flea, was visibly unarmed, and clearly not a threat, a rational jury could conclude that Detective Breault's actions were unreasonable, excessive, and violative of her Fourth Amendment rights.

      As to the second step of the *Saucier* analysis, I conclude that under plaintiff's version of events "it would be clear to a reasonable officer" that Detective Breault's conduct was prohibited by the Fourth Amendment. 533 U.S. at 202. "The factors relevant to the excessive-force analysis,

are well-recognized, as described above." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006). Most of these factors—including the severity of the crime committed by the plaintiff, and whether she was armed, posed a threat, resisted arrest, or attempted to flea—clearly suggest under plaintiff's version that only low-level force was appropriate in this case. *Id*. And Detective Breault's conduct exceeds de minimis force. *Cf. Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (concluding that the level of force used by an officer was de minimis where the suspect suffered only bruises that disappeared quickly and did not require medical attention). While the law recognizes as a general matter that officers must often make split-second decisions about the level of force required in a given situation, it is clearly established that dragging, suffocating, and restraining in such a forceful manner as was used here for a suspect that is not resisting and is unarmed constitutes an excessive use of force. *See, e.g.*, *Couden*, 446 F.3d at 497 (finding excessive force where fugitive-apprehension task-force officers handcuffed, sprayed mace, and pointed guns at a bystander who did not resist arrest or flee); *Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir. 1995) (finding a Fourth Amendment violation where officers conducting a drug raid handcuffed and held at gunpoint bystanders "without any reason to feel threatened" or fear their escape); *Ansell v. Ross Township*, 419 Fed. App'x 209, 211 (3d Cir. 2011) (not precedential) (characterizing an officer's conduct as excessive where he dragged an unarmed, nonthreatening suspect out of bed and slammed him against a wall).

    In sum, because genuine issues of fact exist as to whether Detective Brealt used excessive force when arresting plaintiff, and because such unresolved factual questions foreclose a determination at this time as to whether he made a reasonable mistake of law, I will deny the federal defendants' motion for summary judgment as to count I.

### B.     Assault and Battery (Count III)

The federal defendants argue that summary judgment is appropriate as to plaintiff's claim for assault and battery because the force Detective Breault used against her was reasonable under the circumstances and is therefore "privileged." Under Pennsylvania law, an "'[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).  In *Renk*, the Pennsylvania Supreme Court held that a police officer "may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty" and, in making a lawful arrest, "may use such force as is necessary under the circumstances to effectuate the arrest." *Id*. However, as the *Renk* court recognized, it is "[t]he reasonableness of the force used in making the arrest" that determines "whether the police officer's conduct constitutes an assault and battery." *Id*. As set forth above, factual disputes regarding the extent of the force used by Detective Breault and the circumstances surrounding his use of force preclude me from finding that the force used was reasonable as a matter of law; therefore, I will deny summary judgment as to count III.

### C.     Intentional Infliction of Emotional Distress (Count IV)

The federal defendants argue that summary judgment should be granted in their favor as to plaintiff's IIED claim because Detective Breault's alleged conduct is not sufficiently outrageous or extreme to justify recovery on this theory. I agree.

The Pennsylvania Supreme Court has not explicitly recognized the tort of intentional infliction of emotional distress, but the Third Circuit has "consistently predicted . . . that the

14

Pennsylvania Supreme Court will ultimately recognize this tort." *Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998). To sustain a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must establish that "(1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe." *Walker v. N. Wales Borough*, 395 F. Supp. 2d 219, 232 (E.D. Pa. 2005) (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).

Pennsylvania's highest court has made it clear that, to the extent the tort exists under Pennsylvania law, it is "reserved by the courts for only the most clearly desperate and ultra extreme conduct." *Hoy v. Angelone*, 720 A.2d 745, 753 n.10, 754 (Pa. 1998). "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46 cmt. d. "The tort of intentional infliction of emotional distress requires a showing that the defendants acted in a manner 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Restatement (Second) of Torts § 46). As examples of the conduct that has been found sufficiently outrageous to give rise to an IIED claim, the Pennsylvania Supreme Court has cited cases in which the defendant (1) hid the body of the plaintiffs' son after killing him in an automobile accident; (2) fabricated records suggesting that the plaintiff had killed a third party, and thereby caused him to be indicted for homicide; and (3)

15

knowingly released falsified medical information to the press stating that the plaintiff suffered from a fatal disease. *Hoy*, 720 A.2d. at 754.

An officer's behavior in effectuating an arrest may be sufficient to justify a finding that it was unreasonable and excessive while still not rising to the level of outrageousness required to state a claim for IIED. *See, e.g.*, *Gibson v. Borough of W. Chester*, No. 02-9089, 2004 U.S. Dist. LEXIS 1166 (E.D. Pa. Jan. 9, 2004) (denying summary judgment as to an assault-and-battery claim because of factual disputes regarding the reasonableness of the force used, but granting summary judgment as to an IIED claim because the force did not rise to the level of outrageous conduct). Such is the case here. Even if a jury were to credit plaintiff's version of events entirely, no rational juror could find that Detective Breault's actions were "extreme in degree as to go beyond all possible bounds of decency . . . and utterly intolerable in a civilized society." *McGreevy*, 413 F.3d at 371. While there is a factual dispute as to whether Detective Breault's conduct was reasonable under the circumstances, there can be no doubt that it cannot support a cause of action for IIED.

Furthermore, summary judgment must be granted as to plaintiff's claim for intentional infliction of emotional distress because plaintiff has failed to produce any "objective proof of severe emotional distress," as required under Pennsylvania law. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *see also Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress."). The only evidence plaintiff cites in support of the allegation in her complaint that the incident with Detective Breault caused severe emotional distress is her own allegations. She does not offer any evidence from a medical

professional to support her assertions.[5] This evidence falls far short of the proof required under Pennsylvania law. *See Kazatsky*, 527 A.2d at 992, 995 (concluding that plaintiffs could not recover for IIED where the only evidence of their alleged injuries consisted of their own averments unsubstantiated by competent medical evidence). Therefore, I will grant the federal defendants' motion for summary judgment as to count IV.

**IV.     Conclusion**

For the reasons explained above, I will deny in part, and grant in part, the federal defendants' motion for summary judgment. An appropriate order follows.

---

[5] Plaintiff references treatment by Dr. Eugene Hoffman, a licensed psychologist, but has offered not offered any report, affidavit, or curriculum vitae to substantiate this claim.